ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 23 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

| | |
|---|---|
| EQUIFAX INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MPRIZ HOLDINGS, INC. | ) |
| d/b/a Equifix | ) |
| | ) |
| Defendant. | ) |

Civil Action No.:

1 05-CV 3274 TWT

## COMPLAINT

Plaintiff Equifax Inc. ("Equifax" or "Plaintiff") states the following

for its complaint against Mpriz Holdings, Inc., which is doing business

under the name, Equifix ("Equifix" or "Defendant"):

### Nature of the Case

1. This is an action at law and in equity for trademark infringement,

unfair competition and deceptive trade practices, arising under the

Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. ("Lanham Act"); the

Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); the fair

business practices and unfair and deceptive trade practices acts of the several states, including the Georgia Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 et. seq.; the Georgia antidilution statute, O.C.G.A.§ 10-1-451 and the several states;  and the common law.

2. Founded in 1899, Equifax has for over 105 years been known for providing a wide variety of credit-related services to individual consumers and businesses.  For decades, Equifax has owned and made extensive use in commerce of the EQUIFAX mark in connection with its widely-distributed services.  As a result, the EQUIFAX name serves as a unique identifier of Equifax's services and a powerful symbol representing the credit services offered by Equifax, enjoying an extremely high level of recognition among both consumers and businesses.

3. Beginning well after Equifax's first use of the EQUIFAX mark, Defendant offers credit-related services under the name EQUIFIX and features its services at the url located at <equifix.net>, which is accessible from the state of Georgia.  Such usage already has caused confusion in the marketplace as to the source, sponsorship or affiliation of Defendant's services.  If Defendant is allowed to continue, its conduct is certain to

2

mislead and deceive consumers and to tarnish and dilute the distinctive

quality of the EQUIFAX mark. Defendant's actions constitute trademark

infringement, trademark dilution, cybersquatting, and violate various state

laws governing unfair trade practices. Defendant's actions are causing

Equifax irreparable harm for which there is no adequate remedy at law.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction under Section 39 of the

Lanham Act, 15 U.S.C. § 1121 and under 28 U.S.C. § 1338. This Court has

supplemental jurisdiction over Equifax's related state and common law

claims pursuant to 28 U.S.C. §§ 1338 and 1367.

5. Jurisdiction over Defendant by the courts of this state is

appropriate because Defendant is doing business in this state through an

interactive website accessible in this District, because Defendant has caused

tortious actions with direct effects in this state, and because Equifax has

suffered injury in this state as a result of those actions.

6. Venue of this action is proper in this Court pursuant to the

provisions of 28 U.S.C. § 1391(b) in that a substantial part of the acts

3

complained of occurred and are occurring in this District and in interstate commerce.

## The Parties

7. Equifax is a Georgia corporation with a principal place of business at 1550 Peachtree Street, Atlanta Georgia 30309.

8. On information and belief, Defendant Mpriz Holdings, Inc., doing business as Equifix, is a Texas corporation with its principal place of business at 4779 Newcastle Drive, Frisco, Texas  75034.

## Facts Common to All Claims for Relief
### Plaintiff's EQUIFAX Service Mark Rights

9. For over a century, Equifax has provided credit-related reporting, evaluating, and assessment services for consumers and business nationwide, using the inherently distinctive mark EQUIFAX in connection with those services.

10. As a market leader, Equifax currently provides credit-related services throughout the world.   Equifax employs 5,000 people in 13 countries and has $1.2 billion in revenue.

11.  Over the years, Equifax has adopted and used a number of marks that contain the EQUIFAX mark and has obtained U.S. federal service mark registrations which remain valid, subsisting and unrevoked, as follows:

| **MARK** | **SERIAL NO.** | **REG. NO.** | **SERVICES** |
|---|---|---|---|
| EQUIFAX | 73/057,230 | 1045574 | Conducting investigations and reporting on individuals and firms concerning credit, character and finances in connection with insurance, credit, employment and claims reporting services. |
| EQUIFAX | 74/027,333 | 1644585 | Commercial information agency services for businesses in the areas of real estate, property valuations, pre-employment screening, energy utilization, motor vehicle reports, consumer marketing, credit information, and life, health, property and casualty insurance; marketing services, namely, market research, market data analysis, consulting services in the area of marketing programs, conducting and analyzing survey research, providing mailing lists, and direct mail advertising services; target marketing services, namely, providing demographic, socioeconomic and financial information for target marketing purposes, and market analysis; data processing services in the field of account billing, |

| MARK | SERIAL NO. | REG. NO. | SERVICES |
|---|---|---|---|
| | | | monitoring and collecting; and business management services, namely, account billing, monitoring and collecting; consulting services in the field of life, health, property and casualty insurance; credit information services, namely, providing credit information relating to consumer or commercial applicants for credit or commercial applicants for credit, mortgage loans, utility services and employment, and to fraud prevention; providing credit application processing; credit inquiry and consulting services; and real estate appraisal services; providing on-line access to computer databases containing information relating to applicants for insurance, credit, mortgage loans, and employment, and relating to motor vehicle reports, to debt servicing, and to demographic, socioeconomic and financial data for target marketing; conducting and analyzing safety and loss control surveys; collection and provision of medical histories, physical measurement and other health information; and consulting services in the field of effective energy utilization. |

| MARK | SERIAL NO. | REG. NO. | SERVICES |
|---|---|---|---|
| EQUIFAX | 73/046,298 | 1027544 | Insurance risk information reporting services concerning potential policy holders. |
| EQUIFAX CREDIT PROFILE | 75/88,444 | 2500958 | Financial services, namely providing consumers with information that businesses, banks, and employers use to make credit and employment decisions. |
| EQUIFAX DECISION POWER | 75/173,766 | 2179258 | Evaluation of consumer credit data, namely, providing customers with point of sale consumer information and consumer identification. |
| EQUIFAX EPORT | 76/072,976 | 2896013 | Information services, namely, providing credit information via a global computer network. |
| EQUIFAX ID ADVISOR | 76/120,012 | 2714088 | Financial services, namely, providing financial risk reduction advice and information in the field to financial risk reduction to credit grantors. |
| EQUIFAX RAPIDRESOLVE | 75/793,456 | 2615711 | Financial services, namely, providing credit grantors with updated consumer credit information. |

(all of these marks are collectively referred to as the "EQUIFAX Marks").

Copies of relevant certificates of registration for the EQUIFAX Marks are attached as Exhibit A.

12. Because Equifax has filed affidavits under 15 U.S.C. § 1065 for registration Nos. 1045574, 1644585, 1027544, and 2179258, the certificates constitute conclusive evidence of the validity and Equifax's ownership of the EQUIFAX Marks underlying these registrations, as well as of Equifax's exclusive right to use the EQUIFAX Marks in connection with the services specified in the registrations.

13. Equifax extensively advertises and promotes its services through a wide range of media, including online at the website <equifax.com>, prominently featuring the EQUIFAX Marks. Representative pages of Equifax's website are annexed hereto as Exhibit B. Each year, Equifax spends in excess of twenty-five million ($25 million) dollars on the advertising and promotion that prominently feature the EQUIFAX Marks.

14. Over the years, Equifax has provided billions of dollars of services in connection with the EQUIFAX Marks.

15. As a result of Equifax's continuous and exclusive use of the EQUIFAX Marks in connection with its services, the EQUIFAX Marks enjoy wide public acceptance and association with Equifax and have come to be recognized widely and favorably by the public as indicators of the

origin of Equifax's services.  Thus, Equifax has built up and now owns valuable goodwill that is symbolized by the EQUIFAX Marks.  The consuming public has come to associate the EQUIFAX Marks with Equifax. Through Equifax's untarnished reputation and investments of time, money, and creativity, the EQUIFAX Marks have become an asset of tremendous value and have become exclusively associated by consumers with Equifax and its high quality services.   The EQUIFAX Marks are thus well-known, famous, and distinctive.

## Defendant's Unlawful Activities

16.  On information and belief, after the EQUIFAX Marks had become well-known, famous, and distinctive, Defendant began providing credit-related reporting, evaluating, and assessment services for consumers and business under the name EQUIFIX, offering its services via its website at <equifix.net>.

17.  In 2003, Equifax became aware of the Defendant's services under the EQUIFIX Mark, as featured on the website <equifix.net>.

18.  When Equifax learned of Defendant's activities, it immediately contacted Defendant and advised it that Defendant's use of the mark

EQUIFIX infringed and diluted Equifax's EQUIFAX mark. A copy of this demand letter to Defendant, dated December 29, 2003, is attached as Exhibit C.

19. On information and belief, on or about February 10, 2004, Defendant filed for registration of its EQUIFIX trademark in the U.S. Patent and Trademark Office under Serial No. 76/575,196. The application was refused registration by the U.S. Patent and Trademark Office in an Office Action dated September 16, 2004, following which Defendant allowed its application to lapse for failure to file a Response to the issued Office Action. A copy of Defendant's trademark application and the resulting refusal issued by the U.S. Patent and Trademark Office is attached as Exhibit D.

20. Having received no response to its first demand letter, Equifax sent a second demand letter to Defendant, dated July 13, 2005, a copy of which is attached as Exhibit E.

21. Equifax had the opportunity to discuss the substance of the infringing and diluting use of the EQUIFIX mark directly with Defendant in a telephone conversation on September 12, 2005. Despite these communications, in which Defendant acknowledged the existence of actual

10

confusion in the marketplace, as of the filing date of this action, Defendant has failed to cease use of its mark EQUIFIX.

22. As a follow-up, Equifax forwarded on November 18, 2005 a letter to Defendant restating the substance of its prior written and telephone communications with Defendant. A copy of this demand letter to Defendant is attached as Exhibit F.

23. On information and belief, Defendant's deliberate use of a mark with such striking similarity to the mark EQUIFAX is calculated to trade on the goodwill of the EQUIFAX Marks and thereby increase Defendant's revenue by encouraging consumer confusion.

24. The resemblance between the marks EQUIFAX and EQUIFIX for virtually identical services is so striking that no plausible explanation exists for the similarity other than Defendant's obvious and patent desire to deceive and to create confusion as to source or sponsorship and to use Equifax's mark as a triggering mechanism for Defendant's sales of its credit services.

11

25. Defendant's EQUIFIX mark is virtually identical in sight, sound, and overall commercial impression with Equifax's distinctive EQUIFAX mark.

26. Equifax has not authorized or licensed Defendant to use colorable imitations of Equifax's distinctive EQUIFAX mark.

27. Defendant's unauthorized use of colorable imitations of the EQUIFAX mark creates the false and misleading impression that Defendant's services are affiliated, connected or associated with Equifax, or have the sponsorship, endorsement or approval of Equifax.

28. Because the public associates the EQUIFAX mark with Equifax and its services, Defendant's unauthorized use of colorable imitations of the EQUIFAX mark presents a substantial likelihood of public confusion, mistake, and deception. Defendant's unauthorized use also is causing an erosion of the public's exclusive identification of the EQUIFAX mark with Equifax, thus diminishing its distinctiveness, uniqueness, commercial effectiveness, and prestigious connotations.

29.  Defendant's use and continued use of colorable imitations of the EQUIFAX mark despite constructive and actual notice of Equifax's rights, demonstrates an intentional, willful, and bad faith intent to create confusion, mistake and deception of the public and to trade on Equifax's established goodwill, by implying a nonexistent association, connection, affiliation or relationship with Equifax and its goods to the great and irreparable injury of Equifax.

## COUNT I
## FEDERAL  SERVICE MARK INFRINGEMENT

30.  Equifax repeats and incorporates by reference the allegations in paragraphs 1 to 29 as if fully set forth here.

31.  Equifax has invested substantial efforts for many years in promoting its services under the EQUIFAX Marks in an effort to develop goodwill associated with the EQUIFAX Marks and to gain public recognition of the EQUIFAX Marks as originating with Equifax.  As part of Equifax's efforts to protect the integrity and quality of its EQUIFAX Marks, Equifax owns valid federal registrations of the EQUIFAX Marks with the United States Patent and Trademark Office (see Exhibit A).

13

32. The EQUIFAX Marks are strong and distinctive and have accrued substantial goodwill. The consuming public associates the EQUIFAX Marks with Equifax and its services.

33. By using a confusingly similar imitation of the EQUIFAX Marks, Defendant's use of the EQUIFIX mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that its services are associated or connected with Equifax, or have Equifax's sponsorship, endorsement, or approval.

34. Defendant's activities are having a substantial effect on interstate commerce because, on information and belief, through its solicitation of services promoted on its website at <equifix.net> it is engaging in interstate transactions under its EQUIFIX mark.

35. Equifax's registration of its EQUIFAX Marks constitute constructive notice of Equifax's rights that accrue from use of the EQUIFAX Marks. Defendant also knew first-hand of Equifax's use of and registrations of the EQUIFAX Marks; its application to register the EQUIFIX mark was refused by the U.S. Patent and Trademark Office on the basis of Equifax's rights in certain of the EQUIFAX Marks, and its use of

14

the mark was contested by Equifax in two demand letters written to Defendant. Defendant's unauthorized use of colorable imitations of these marks for its own significant benefit, and continued use after notice and demand, demonstrates a willful and bad faith infringement.

36. As a direct and proximate result of Defendant's unauthorized use of the EQUIFIX mark, Equifax has been and continues to be irreparably damaged. Equifax has no adequate remedy at law.

37. Defendant is causing, and is likely to cause, substantial injury to the public and to Equifax, and Equifax is entitled to injunctive relief and to recover Defendant's profits and Equifax's reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION

38. Equifax repeats and incorporates by reference the allegations in paragraphs 1 to 37 as if fully set forth here.

39. Defendant's use of the EQUIFIX mark in connection with credit-related reporting, evaluating, and assessment services for consumers and businesses is causing and is likely to cause confusion, deception and mistake

15

by creating the false and misleading impression that Defendant's services are affiliated, connected, or associated with Equifax or have the sponsorship, endorsement, or approval of Equifax.

40.  Defendant has and is making false representations, false descriptions, and false designations of origin of Defendant's services in violation of 15 U.S.C. § 1125(a) and, unless enjoined, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Equifax's goodwill and reputation as symbolized by its EQUIFAX Marks, for which Equifax has no adequate remedy at law.

41.  Defendant's activities are having a substantial effect on interstate commerce because they are damaging the goodwill that Equifax has achieved for its EQUIFAX Marks in interstate commerce.  Defendant's activities are also affecting interstate commerce because, on information and belief, Defendant has engaged in interstate transactions under its EQUIFIX mark.

42.  Defendant's actions demonstrate an intentional, willful, and bad faith intent to trade on the goodwill associated with Equifax's EQUIFAX Marks to the great and irreparable injury of Equifax.

16

43.  Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Equifax, and Equifax is entitled to injunctive relief and to recover Defendant's profits and Equifax's reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

44.  Equifax repeats and incorporates by reference the allegations contained in paragraphs 1 to 43 as if fully set forth here.

45.  Defendant has engaged in common law trademark infringement and unfair competition that have created and will continue to create a likelihood of confusion to the irreparable injury of Equifax unless restrained by this Court.  Equifax has no adequate remedy at law for this injury.

46.  On information and belief, Defendant has acted with full knowledge of Equifax's use of, and statutory and common law rights to, its EQUIFAX Marks and without regard to the likelihood of confusion of the public created by those activities.

47.  As a result of Defendant's acts, Equifax has been damaged in an amount not yet determined or ascertainable.  At a minimum, however,

Equifax is entitled to injunctive relief and to an award of Defendant's profits.

## COUNT IV
## STATE TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION

48. Equifax repeats and incorporates by reference the allegations contained in paragraphs 1 to 47 as if fully set forth here.

49. Equifax is the owner of the distinctive EQUIFAX Marks. Through widespread and favorable public acceptance and recognition, the EQUIFAX Mark are distinctive and have become associated uniquely with Equifax and its services, and are of tremendous value to Equifax as universally recognized symbols of its services.

50. By making unauthorized use of the EQUIFAX Marks, Defendant has diluted the distinctiveness of Equifax's service marks by eroding the public's exclusive identification of the marks with Equifax, thus diminishing the distinctiveness, effectiveness, and prestigious connotations of the service marks.

18

51. Defendant is causing and will continue to cause irreparable injury to Equifax's goodwill and business reputation, and dilution of the distinctive and valuable quality of the EQUIFAX Marks in violation of O.C.G.A. § 10-1-451(b), and Equifax is therefore entitled to injunctive relief.

**COUNT V**
**STATE DECEPTIVE TRADE PRACTICES**

52. Equifax repeats and incorporates by reference the allegations contained in paragraphs 1 to 51 as if fully set forth here.

53. Defendant has engaged in deceptive trade practices within the meaning of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 et seq. by: (1) passing off its services as those of Equifax; (2) causing a likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective services; (3) causing a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association of Defendant with Equifax; (4) using deceptive representations or designations of origin in connection with Defendant's services; (5) representing that Defendant's services have the sponsorship or approval of Equifax, which they do not have; and (6) engaging in other

conduct that similarly creates a likelihood of confusion or of misunderstanding of the trade and public.

54. The unauthorized use by Defendant of a confusingly similar imitation of the EQUIFAX Marks is causing and is likely to cause substantial injury to the public and to Equifax, and Equifax is entitled to recover its costs and reasonable attorneys' fees pursuant to O.C.G.A. § 10-1-373.

## COUNT VI
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

55. Equifax repeats and incorporates by reference the allegations contained in paragraphs 1 to 54 as if fully set forth here.

56. By registering the <equifix.net> address, Defendant has registered and used a domain name that is confusingly similar to Equifax's EQUIFAX Marks. Upon information and belief, Defendant registered the <equifix.net> address with the bad faith intent of profiting unlawfully from Equifax's EQUIFAX Marks.

57. Defendant registered the <equifix.net> address and has used it with the intent to divert consumers from Equifax's online location to a site accessible under a domain name that could harm the goodwill represented by Equifax's EQUIFAX Marks with the intent to tarnish or disparage the marks, by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the site.

58. Defendant's actions constitute cybersquatting in violation of 15 U.S.C. § 1125(d).

59. The unauthorized registration and use of the <equifix.net> address has caused and will continue to cause irreparable injury to Equifax and to the goodwill associated with its EQUIFAX Marks.

## PRAYER FOR RELIEF

Equifax therefore prays for relief as follows:

1. That Defendant and all agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, and each of them, be permanently enjoined from:

21

(a)     using the trademark or trade name EQUIFIX, or any copy, reproduction, colorable imitation or simulation of the EQUIFAX Marks, in connection with any services offered by Defendant;

(b)     using any trademark, service mark, trade dress, name, logo, or source designation of any kind that is a copy, reproduction, counterfeit, copy, colorable imitation or simulation of or confusingly similar to, or in any way similar to, the trademarks, service marks, trade dresses, names, or logos of Equifax, or is likely to cause confusion, mistake, deception, or public misunderstanding that Defendant's services are those of Equifax, or are sponsored by or in any way related to Equifax, or is likely to cause dilution of Equifax's EQUIFAX Marks;

(c)     using as an online electronic address any URL designation or domain name, including but not limited to the <equifix.net> address, that is confusingly similar to any of Equifax's EQUIFAX Marks or any other mark owned by Equifax;

(d)     using as an online electronic address any URL designation or domain name that is calculated to generate, or benefit from, confusion among customers for Equifax's goods and services;

22

(e)     passing off, palming off, or assisting in passing off or palming off, Defendant's services as those of Equifax, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

(f)     interfering with Equifax's business relations; and

(g)     using any trade practices, including those complained of here, which tend to unfairly compete with or injure Equifax, its business and the goodwill appertaining thereto;

2. That Defendant be compelled to account to Equifax for any and all profits derived by Defendant;

3. That Defendant be required to pay to Equifax the costs of this action and Equifax's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and O.C.G.A. § 10-1-373(b);

4. That Defendant be ordered to assign to Equifax the <equifix.net> URL address.

5. That Defendant be ordered to deliver up for destruction all products, bags, boxes, labels, tags, signs, packages, receptacles, advertising, marketing or promotional material, stationery or other materials in the possession, custody, or under the control of Defendant that are found to

infringe or to dilute any of the EQUIFAX Marks or that otherwise unfairly compete with Equifax and its services; and

6. That Equifax have such other and further relief as the Court may deem just.

Respectfully submitted this _23rd_ day of December, 2005.


By: _____

KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309-4530

(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)

Theodore H. Davis, Jr.
GA Bar No. 212913
Christine P. James
GA Bar No. 388698

Attorneys for Plaintiff

24

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the attached pleading complies with the font and point selections prescribed by Local Rule 5.1B and uses 14 point Times New Roman Font.